

# THE ATTORNEY GENERAL
## OF TEXAS

August 1, 1989

JIM MATTOX
ATTORNEY GENERAL

Mr. Jim Hightower
Commissioner
The Department of Agriculture
P. O. Box 12847
Austin, Texas    78711

Mr. David A. Ivie
Executive Director
Structural Pest Control
   Board
1300 East Anderson Lane
Austin, Texas    78752

Opinion No.  JM-1078

Re:  Authorization to lic-
ense non-commercial appli-
cators  who  wish  to  use
certain   termiticides   in
non-agricultural pest con-
trol  activities,  and  re-
lated matters   (RQ-1189)

Gentlemen:

    Each of you has requested an opinion of this office  to
resolve a jurisdictional dispute  between the Department  of
Agriculture (the department) and the Structural Pest Control
Board (the  board).   The  department  has  promulgated  and
published rules pursuant to the Texas Pesticide Control  Act
(chapter 76 of the Texas  Agriculture Code) which the  board
asserts are  (1)  beyond  the  statutory  authority  of  the
department and (2) invade an area of regulation assigned  to
the board  by  the  Structural  Pest  Control  Act  (article
135b-6, V.T.C.S.).

    The Structural  Pest Control  Board raises  five  ques-
tions, but one has been mooted by subsequent rules  revision
by the department.   The  four to be addressed are:

>     1.  Does the  Department [of  Agriculture]
> have  the  authority  under  Chapter  76   of
> the Agriculture  Code  to  certify  pesticide
> applicators   in   the    category   of    termite
> control, as the  Department has attempted  to
> do under  section 7.11  of the  newly-adopted
> rules, published  in final  form in  12  Tex.
> Reg.  2378  (1987)?

>     2.  Are persons who use restricted-use  or
> state-limited-use  pesticides  on   their  own
> property or on the property of their employer

exempt from the licensing requirements of the Structural Pest Control Act and regulations, as a result of the adoption of Section 7.11?

3. Does the Department have the authority to require record-keeping and sales reports for pesticides not classified for restricted-use or state-limited-use, as the Department has attempted to do under Section 7.41 (a) and (b) of the newly-adopted rules, published in final form in 12 Tex. Reg. 2379 (1987)?

4. Does the Department have the authority under Chapter 76 of the Agriculture Code to establish and enforce requirements relating to the application of pesticides upon persons who are not licensed or certified by the Department, as proposed under Section 7.41(c), as republished in 12 Tex. Reg. 2369 (1987)?

The Department of Agriculture has, for its part, asked:

Which state agency has authority to provide for certification of applicators (1) who do not work for commercial pest control businesses, (2) who wish to use restricted-use or state-limited-use pesticides and (3) who apply those pesticides in non-agricultural settings?

The Structural Pest Control Act was enacted in 1971 by the Sixty-second Legislature and has been amended by each legislature convening since that time except the Sixty-seventh Legislature. The board is required to

develop standards and criteria for licensing individuals engaged in the business of structural pest control. The board may require individuals to pass an examination demonstrating their competence in the field in order to qualify for a Certified Applicator's License.

V.T.C.S. art. 135b-6, § 4(a). It is also charged with developing standards and criteria for issuing Structural Pest Control Business Licenses to persons engaged in the business of structural pest control, but the statute stipulates that each structural pest control business licensee shall at all times employ a certified applicator. Id.

§ 4(b). Non-licensed, non-exempt persons who "engage" in the business of structural pest control are subject to criminal penalty. Id. §§ 5(a), 10A.

Terms used in the statute are defined by section 2. A person (including a corporation) is deemed to be "engaged in the business of structural pest control" if the person engages in or performs specified acts "for compensation," or offers or advertises to do so. Among those specified acts are the identification (or the making of inspections to identify) infestations of: (1) insects and related pests, wood-infesting organisms, rodents, weeds, nuisance birds "and any other obnoxious or undesirable animals" which might infest "households, railroad cars, ships, docks, trucks, airplanes, or other structures, or the contents thereof"; or (2) pests or diseases of "trees, shrubs, or other plantings" that are located "in a park or adjacent to a residence, business establishment, industrial plant, institutional building, or street." V.T.C.S. art. 135b-6, § 2(a)(1). See Attorney General Opinion H-800 (1976). The board is ex-pressly made "the sole authority in this state for licensing persons engaged in the business of structural pest control" by section 11A of the statute. Of course, the sole licens-ing authority is not necessarily the sole regulating author-ity. Cf. Agric. Code § 76.003.

The rules (to which the board objects) were promulgated by the department pursuant to a nonsubstantive recodification of the Texas Pesticide Control Act, as amended in 1981. That statute was formerly codified as article 135b-5a, V.T.C.S., but now is found in chapter 76 of the Agriculture Code. See Acts 1981, 67th Leg., ch. 693, at 2589; id. ch. 388, at 1012, 1488; id. ch. 127, at 318; Acts 1975, 64th Leg., ch. 383, at 995.[1]

Chapter 76 of the Agriculture Code is divided into nine subchapters, some of which deal with the labeling and registration of pesticides and the licensing of dealers who distribute "restricted-use" or "state-limited-use" pesti-cides. Others deal with storage and disposal of pesticides,

---

1. Inasmuch as the 1981 provisions now found in chapter 76 of the Agriculture Code were not intended to work changes in the law, we can look to former article 135b-5a for clarification. See Gov't Code § 311.023 (Code Construction Act, formerly article 5429b-2, V.T.C.S.; see Acts 1985, 69th Leg., ch. 479, at 1652, 1719).

with enforcement powers of the department and other regulatory agencies, with remedies available, and with penalties. The two subchapters with which we are most concerned are subchapters A, setting out general provisions, and B, concerning regulation of the use and application of pesticides.[2]

An appreciation of the historical background against which the legislature acted is helpful. At the time the Structural Pest Control Act was enacted in 1971, there was in effect a federal law regulating the registration, distribution, and labeling of "economic poisons," including pesticides. See 7 U.S.C.A. § 135-135K (now superseded). In 1972, that federal legislation was extensively revised. The result was the Federal Insecticide, Fungicide and Rodenticide Act now found at 7 U.S.C.A., sections 136-136y. Added was a scheme for classifying pesticides as either "restricted use" or "general use." Those in the general use category were not regulated so stringently. Persons wishing to apply "restricted use" pesticides, however, were required to undergo federal testing and certification in states which had not, by the fall of 1976, established adequate testing and certification programs of their own. See Attorney General Opinion H-800 (1976). That federal pressure was the impetus for the 1975 enactment of the Texas Pesticide Control Act now found in the Agriculture Code.

To avoid federal regulation of applicators, the governor of a state was required by the federal law, to submit a "state plan"

> (A) [designating] a State agency as the agency responsible for administering the plan throughout the State;
>
> (B) [containing] satisfactory assurances that such agency has or will have the legal

---

2. The Structural Pest Control Act and the provisions of the Texas Pesticide Control Act concern the same general subject, have the same general purpose, and, to some extent, relate to the same classes of persons and things. Such laws are to be considered in pari materia, i.e., they are to be read and construed together, as though they were parts of the same law, to determine the intent of the legislature. See 53 Tex. Jur. 2d, Statutes § 186, at 280.

authority and qualified personnel  necessary to carry out the plan;

(C) [giving] satisfactory assurances that the State will devote adequate funds to the administration of the plan;

(D) [providing] that the State agency will make such reports to the Administrator in such form and [contain] such information as the Administrator may from time to time require; and

(E) [containing] satisfactory assurances that State standards for the certification of applicators of pesticides conform with those standards prescribed by the Administrator. . . .

7 U.S.C.A. § 136b(a)(2).

The federal act authorized the administrator of the federal Environmental Protection Agency to prescribe regulations to carry out the provisions of the law, including those concerning a state plan. See 7 U.S.C.A. § 136w(a). Cf. National Cattlemen's Ass'n v. United States Environmental Protection Agency, 773 F.2d 268 (10th Cir. 1985). The act also declared it unlawful to make restricted-use pesticides available except in accordance with federal statutory provisions "and any regulations thereunder." 7 U.S.C.A. § 136j(a)(2)(F).[3]

---

3. Regulations of the Environmental Protection Agency regarding the certification of pesticide application are found the in Code of Federal Regulations, 40 C.F.R. 171. Section 171.7 of the regulations amplified the requisites of an acceptable state plan. It specified, and continues to specify, that the administrator will approve a plan if, among other things, it

(a) [D]esignates a State agency as the agency responsible for administering the plan throughout the State. Since several other agencies or organizations may also be involved in administering portions of the State plan, all of these shall be identified in the State plan, particularly any other
(Footnote Continued)

Section 171.3 of the federal regulations establishes ten categories of applicators, other than private applicators, and says state systems "shall adopt" them as needed. Section 171.4 sets out the specific standards of competency appropriate to each category of commercial applicators. The categories include agricultural pest control; forest pest control; aquatic pest control; right of way pest control; industrial, institutional, structural and health related pest control; and public health pest control.

With that history in mind, we examine the disputed Texas Department of Agriculture rules. The department rule to which the first question of the board relates amends subsection (a) of section 7.11, part I, title 4, of the Texas Administrative Code. As adopted by the department, it reads:

> § 7.11.  Applicator Certification.
>
> (a)  The Texas Department of Agriculture will certify only <u>noncommercial</u> applicators for use of <u>state-limited-use</u> pesticides for treatment of <u>subterranean termites</u> regulated under §7.40 of this title (relating to State-Limited-Use Pesticides for Control of Subterranean Termites).  A person licensed as a noncommercial applicator for termite

---

(Footnote Continued)

> agencies or organizations responsible for certifying applicators and suspending or revoking certification.  In the extent that more than one governmental agency will be responsible for performing certain functions under the State plans, the plans shall identify which functions are to be performed by which agency and indicate how the program will be coordinated by the lead agency to ensure consistency of programs within the State.  The lead agency will serve as the central contact point for the Environmental Protection Agency in carrying out the certification program[;]

and

> (e)  [C]ontains satisfactory assurances that the State standards for the certification of applicators of pesticides conform to those standards prescribed by the Administrator under §§ 171.1 through 171.6.

control under this subsection may use a pesticide with an active ingredient listed in §7.40(a) of this title (relating to State-Limited-Use Pesticides for Control of Subterranean Termites) on property owned or operated by that applicator or by another person for whom that applicator is employed, <u>provided that a person who is certified as a noncommercial applicator under this section may not make any application for which a license is required pursuant to the Texas Structural Pest Control Act, Texas Civil Statues, Article 135b-6</u>.[4] (Emphasis added.)

We are of the opinion that it is the Structural Pest Control Board and not the Texas Department of Agriculture

---

4. Subterranean termites are social insects that live in nests or colonies in the soil. In nature, they scavenge wood, breaking down the large amounts of dead trees and other wood which accumulate in forests. Problems begin when termites invade human structures. <u>See</u> Texas Agricultural Extension Service "House and Landscape Pests" Bulletin L-1781, Hamman and Owens, <u>Subterranean Termites</u> (1982). In its official explanation for the adoption of this rule, the department stated:

Section 7.11 is changed to allow certain non-commercial applicators to qualify for purchase and use of state-limited-use termiticides. Such applicators will include maintenance personnel, employees of local governments, and other non-commercial applicators. One change from the proposed text is made by adding the phrase 'for termite control' to the second sentence to make it clear that those noncommercial applicators who are not certified for termite control may not purchase state-limited-use termiticides. A second change is made at the request of the executive director of the Structural Pest Control Board (SPCB) to clarify the proviso in the second sentence. That clause is intended to make it clear that a noncommercial applicator who is certified by TDA is not authorized to make any application for which a license is required from the SPCB.

12 Tex. Reg. 2376.

that has the power to license, certify and regulate applicators of termiticides for the eradication of subterranean termites in non-agricultural settings, *i.e.*, as permitted by the Structural Pest Control Act, article 135b-6, section 2(a)(1). The board is authorized by its act not only to license persons "engaged in the business of structural pest control"; it may also license "certified applicators" and "technicians." V.T.C.S. art. 135b-6, § 4. See Attorney General Opinion H-800 (1976). Cf. Attorney General Opinion H-504 (1975). That act defines "certified applicator" as "an individual who has been licensed and determined by the board to be competent to use or supervise the use of any restricted-use and state-limited-use pesticide covered by his currently valid certified applicator license." V.T.C.S. art. 135b-6, § 2(b)(4).[5]

Section 11A of article 135b-6 makes the board the sole authority in Texas for licensing persons engaged in the business of structural pest control, *i.e.*, for establishing who is entitled to engage in that business. The act does not contemplate a *different* licensing standard for those who wish to be licensed to apply dangerous termiticides for structural pest control but who do not intend at present, for whatever reason, to engage for compensation in acts prohibited to non-licensees. It holds non-commercial structural pest control licensees to the standards set for commercial licensees, and, for that reason, entitles them, if they meet those standards, to engage in the structural pest control business should they choose to do so.[6] In Attorney General Opinion M-1115 (1972), it was said that the legislature, by excluding certain persons from the

---

5. Although section 5(a) of the Structural Pest Control Act deems anyone performing certain acts "for compensation" to be "engaged in the business of structural pest control" in violation of the act unless the person possesses a valid structural pest control business license issued by the board, it is not necessary that a person issued such a license be in business or perform those acts only for compensation. A "Structural Pest Control Business License" means "that license issued to a person <u>entitling</u> that person and his employees to engage in the business of structural pest control under the direct supervision of a certified applicator." (Emphasis added.) V.T.C.S. art. 135b-6, § 2(a)(7).

6. <u>Ibid</u> note 5.

provisions of the Structural Pest Control Act, by implication included all others.

Section 5(b) of the Structural Pest Control Act specifies the situations in which persons not licensed by the board may use insecticides, rodenticides, pesticides and fumigants for structural pest control without violating the act:

> (b) An individual without a license may, on his own premises or on premises in which he owns a partnership or joint venture interest, or on the premises of an employer by whom he was hired primarily to perform other services, use insecticides, pesticides, rodenticides, fumigants, or allied chemicals or substances or mechanical devices designed to prevent, control, or eliminate pest infestations <u>unless that use is prohibited by rule of the United States Environmental Protection Agency or unless the substance used is labeled as a restricted-use pesticide or a state-limited-use pesticide</u>.[7] (Emphasis added.)

-------

7. Section 11 of the act states that the act does not apply to the following persons, nor are they to be deemed to be engaging in the business of structural pest control:

(1) an officer or employee of a governmental or educational agency who performs pest control services as part of his duties of employment;

(2) a person who performs pest control work upon property which he owns, leases, or rents as his dwelling;

(3) a nurseryman, holding a certificate from the commissioner of agriculture pursuant to Articles 126 and 126a, Revised Civil Statutes of Texas, 1925, as amended, when doing pest control work on growing plants, trees, shrubs, grass, or other horticultural plants; and

(4) a person or his employee who is engaged in the business of agriculture or aerial application or

(Footnote Continued)

V.T.C.S. art. 135b-6, § 5(b).

The board has the authority to provide for the certification of termiticide applicators who do not work for commercial pest control businesses but who wish to apply restricted-use or state-limited-use pesticides in non-agricultural settings. Our conclusion is supported by the Texas Pesticide Control Act itself and by the "state plan" submitted to the federal Environmental Protection Agency.

Although the Department of Agriculture is given power by the Texas Pesticide Control Act to establish standards regarding the identification, conditions of use, record-keeping, handling, transportation, storage, display, distribution, disposal and labeling of pesticides, pesticide containers, and pesticide devices (see sections 76.002, 76.003, and 76.004 of the act), it is not given general regulatory power over the licensees of other agencies. Cf. Agric. Code § 76.104.

Section 76.102 of the Agriculture Code provides

> (a) The department shall certify pesticide applicators involved in the following license use categories:

---

(Footnote Continued)
custom application of pesticides to agricultural lands.

V.T.C.S. art. 135b-6, § 11. But section 11 merely supplements section 5(b). It does not authorize anyone to use restricted-use or state-limited-use pesticides in any situation. Cf. Attorney General Opinion MW-525 (1982) (inspections). It merely exempts certain persons, who would otherwise be considered engaged in structural pest control, from the need to possess a license when, for themselves or for someone else, they perform those general acts defined by the statute as pest control services. Federal and state restrictions on the use of particular pesticides remain applicable (but see section 76.203(a)(2) of the Agriculture Code), and if people in those exempt categories wish to use those pesticides in connection with structural pest control, they must obtain a license from the board notwithstanding that their activities would otherwise be free from board regulation. See Agric. Code § 76.071(b). See Attorney General Opinion M-1115 (1972).

(1) agricultural pest control, including animal pest control;

(2) forest pest control;

(3) ornamental and turf pest control, <u>except as provided by the Texas Structural Pest Control Act</u>, as amended (Article 135b-6, Vernon's Texas Civil Statutes);

(4) seed treatments;

(5) right-of-way pest control;

(6) regulatory pest control;

(7) aquatic pest control; and

(8) demonstration pest control.

(b) The Texas Department of Health shall certify pesticide applicators involved in the license use category of health-related pest control. (Emphasis added.)

Not mentioned by section 76.102 or any other section of the Agriculture Code are applicators (except those for health-related pest control) involved in the "industrial, institutional, structural and health related pest control" category of the Federal Insecticide, Fungicide and Rodenticide Act -- the only federal category omitted from section 76.102. The Texas Pesticide Control Act does not expressly authorize the department or any other agency to certify such applicators, and its failure to do so implies that agencies which derive their applicator certification powers from its provisions do not possess that authority.[8]

---

8. Previously, the Texas Animal Health Commission was the agency authorized by the Texas Pesticide Control Act to certify pesticide applicators involved in animal pest control, and the Texas Water Quality Board certified pesticide applicators involved in aquatic pest control. The Texas Pesticide Control Act was amended in 1981 to authorize the department to certify them instead. <u>See</u> Acts 1981, 67th Leg., ch. 693, at 2589. The clear
(Footnote Continued)

That conclusion is bolstered by the current "state plan" submitted to the federal government. See Agric. Code § 76.101. The department is made the "lead agency" by section 76.101 of the Agriculture Code in the regulation of pesticide use and application and it is responsible for coordinating activities of state agencies. In that capacity, following the 1981 amendments to the Texas Pesticide Control Act, the department submitted to the administrator of the federal Environmental Protection Agency a plan to which was attached a letter from the department's general counsel detailing the legal authority of the cooperating agencies to enforce the state plan.

On page two of the plan, it is stated:

> The Texas Structural Pest Control Board will certify commercial and noncommercial applicators involved in industrial, institutional, structural, and health-related pest control.
>
> . . . .
>
> Each agency will be responsible for developing and enforcing its own certification program.

Other provisions of the state plan are consistent. On page three, the plan states:

> Applicators of restricted-use pesticides, used to control or eradicate structural pest, have been placed under the jurisdiction of the Structural Pest Control Board by the 64th Texas Legislature which amended the Structural Pest Control Act to include regulation of applicators of restricted-use pesticides. The amended Act also provides a

---

(Footnote Continued)

implication of this legislative selectivity is that the department does not possess authority to certify applicators involved in "industrial, institutional, structural and health related pest control," one of the use categories established pursuant to the Federal Insecticide, Fungicide and Rodenticide Act that was the genesis of the Texas Pesticide Control Act. Otherwise, the legislature would have so specified.

means of certifying such applicator's competency to use said pesticides.

On page five, it is said:

Section 5(a) of the Structural Pest Control Act and Section 76.105 of the Texas Pesticide Control Act make it unlawful for persons other than certified applicators or person under the direct supervision of a certified applicator to use restricted-use pesticides.

And on pages nine and ten this is found:

The Texas Structural Pest Control Board (SPCB) will certify commercial and noncommercial applicators involved in industrial, institutional, structural, and health-related pest control.

|   |   | SPCB Regulation Category No. |
|---|---|---|
| 1. | Pest Control | 7(a) |
| 2. | Termite Control | 7(b) |
| 3. | Lawn and Ornamental | 7(c) |
| 4. | Fumigation | 7(d) |
| 5. | Weed | 7(e) |
| 6. | Wood Preservation | 7(f) |

The new regulation adopted by the department as section 7.11 provides that a person certified as a noncommercial applicator to use state-limited-use pesticides under the section "may not make any application for which a license is required pursuant to the Texas Structural Pest Control Act." Under the Structural Pest Control Act as we construe it, any application of restricted-use or state-limited-use pesticides involving industrial, institutional and structural pest control requires a license from the board. V.T.C.S. art. 135b-6, § 5(b). As a consequence, the certification by the department of a person under section 7.11 would have little effect, if any. In our opinion, the department has authority to make application certifications only with

respect to the use categories specified in section 76.102 of the Agriculture Code.[9]

The foregoing discussion answers the more general question of the department and the first and second specific questions of the board. Persons are not exempted by section 7.11 of the department's regulations from the licensing requirements of the board with respect to the use of restricted-use or state-limited-use pesticides on their own property or on the property of their employer.

The final two questions submitted by the board deal with record-keeping for pesticides which are not restricted-use or state-limited-use, and with departmental regulation of board licensees.

The department revised sections 7.41(a) and 7.41(b) to read:

> (a)  From November 1, 1987 - October 31, 1989, any registrant of a pesticide which is registered for use on subterranean termites in Texas and any dealer licensed pursuant to [section] 7.8 of this title (relating to Pesticide Dealers) shall record information on the distribution of any pesticide registered for use on subterranean termites on forms prepared by the Texas Department of Agriculture and submit copies of those forms quarterly to TDA. The information shall include the quantities of the pesticide distributed and the name and county of residence of the person to whom the pesticide was distributed. Such records will be treated as confidential business records if so marked and to the extent authorized by Texas Civil Statues, Article 6252-17(a).
>
> (b)  From November 1, 1987 - October 31, 1989, any registrant of a pesticide which is registered for use on subterranean termites in Texas and any dealer licensed pursuant to

---

9.  The licensing of certified applicators by the department is made contingent, by section 76.103 of the code, on the availability of federal funds. That is not the case with certifications by the board.

> [section] 7.8 of this title (relating to Pesticide Dealers) shall report to TDA in writing within 15 days of receiving any report of a misuse or potential misuse of any pesticide in Texas and any report of an adverse human or environmental impact relating to a use of the pesticide in Texas if the pesticide was distributed by the registrant or dealer for use in the treatment of subterranean termites. Reports shall be made on forms provided by the Texas Department of Agriculture.

These regulations do not attempt to regulate board licensees; they impose duties only upon registrants of pesticides and pesticide dealers. All pesticides distributed in Texas, including those not defined as restricted-use or state-limited-use, must be registered with the department. Agric. Code § 76.041. And a person may not distribute restricted-use or state-limited-use pesticides without a dealer's license issued by the department. Id. § 76.071.

Section 76.004 of the Agriculture Code reads:

> After notice and hearing, the department may adopt rules for carrying out the provisions of this chapter, including rules providing for:
>
> (1) the collection, examination, and reporting of records, devices, and samples of pesticides;
>
> (2) the safe handling, transportation, storage, display, distribution, or disposal of pesticides and pesticide containers; and
>
> (3) labeling requirements for pesticides and devices required to be registered under this chapter.

The authority conferred by section 76.004 is not confined to restricted-use or state-limited-use pesticides. Cf. id. § 76.003(d). It is the duty of the department to adopt lists of state-limited-use pesticides, and a pesticide may be included on such a list if the department determines that it requires additional restrictions to prevent unreasonable risk to man or the environment. The rules contained

in departmental regulations section 7.41(a) and (b) are designed to aid in the discharge of that duty and we do not believe they exceed the authority of the department. Gerst v. Oak Cliff Savings and Loan Ass'n, 432 S.W.2d 702 (Tex. 1968). See State Bd. of Ins. v. Deffebach, 631 S.W.2d 794 (Tex. App. - Austin 1982, writ ref'd n.r.e.).

The final board question to be addressed concerns recently adopted subsection (c) of section 7.41 of the departmental regulations. See 12 Tex. Reg. 4187. Subsection (c) reads:

> (c) Any licensed or certified applicator who is responsible for the treatment for subterranean termites must take the following actions in conjunction with the treatment of an existing house, apartment, hotel, restaurant, office, or other building in which people reside or work.
>
> (1) Prior to treatment or the execution of a contract for treatment, the applicator must assure that the owner or manager of the building has received a . . . consumer information sheet [which has been prepared by a registrant and approved by the Texas Department of Agriculture to a registrant of the pesticide for distribution pursuant to] subsection (d) of this section.
>
> (2) Following the application, the applicator must post a durable sign adjacent to the hot water heater or electric meter or beneath the kitchen sink giving the name and address of the applicator, the date of the treatment, the name of the active ingredient used, and a statement that the notice should not be removed. (Emphasis added.)

Unlike the new provisions of sections 7.41 (a) and (b), which regulate only registrants and dealers who are under the jurisdiction of the department, subsection (c) clearly attempts to directly regulate licensees of the Structural Pest Control Board by legislative rule. The provisions of subsection (c) are beyond the authority of the department to promulgate or enforce as direct regulatory restraints upon board licensees. Cf. First Federal Savings and Loan Ass'n

v. Vandygriff, 639 S.W.2d 492 (Tex. App. - Austin 1982, writ dism'd w.o.j.).

The provisions of the Texas Pesticide Control Act which authorize the department to regulate pesticide applicators are found in subchapter E of chapter 76 of the Agriculture Code. Section 76.004 of the Agriculture Code empowers the department to "adopt rules for carrying out the provisions of this chapter." Section 76.104 allows the department to regulate the applicators it certifies, and section 76.114 deals with records the department may require of applicators it licenses, but section 76.008 expressly exempts from those and other related sections of the code "a person who is regulated by the Texas Structural Pest Control Act."

Subsection (c) of section 7.41, as revised, is aimed solely at licensed or certified applicators treating "an existing house, apartment, hotel, restaurant, office, or other building in which people reside or work," i.e., aimed solely at licensees of the Structural Pest Control Board, which has its own regulations regarding notices, warnings and information to be supplied the recipient of its licensees' services. See V.T.C.S. art. 135b-6, §§ 4(d), 7B. As a consequence, subsection (c) of section 7.41 of the department's regulations is invalid and of no effect as a direct regulation of Structural Pest Control Board licensees.

However, the Structural Pest Control Act itself specifies in section 4(d) that the rules and regulations of the Structural Pest Control Board relating to the use of economic poisons "shall comply with applicable standards of the federal government and the state commissioner of agriculture governing the use of such substances." (Emphasis added.) If subsection (c) could be regarded as intended to set standards that apply generally to the use of certain termiticides by whomever they are used (which the Structural Pest Control Board is required by its own act to recognize), the provisions of subsection (c) might be considered to have vitality. We do not think, however, that the subsection can be so construed.

Subsection (c) does not operate only if restricted-use or state-limited-use pesticides are to be applied. It embraces all treatments of certain structures by certified

applicators using _any_ termiticide.[10] It embraces pesticides used to treat subterranean termites that unlicensed persons may use and that do not require supervision by a certified applicator. Yet, only licensed or certified applicators are affected by its terms.

The danger sought to be reduced by the regulation is greater when persons not under the supervision of a board certified applicator undertake treatment of an existing house, apartment, hotel, restaurant, office or other building in which people reside or work. It is greater because licensees must comply with board restrictions not applicable to those who need no license. The board imposes its own requirements regarding the distribution of consumer information -- requirements it is without authority to impose on persons who need not be licensed. See Structural Pest Control Board Regulation 599.4.

The department has obviously not sought to establish a _general_ standard or condition of use for termiticides by the promulgation of subsection (c). Rather, it has sought to directly regulate the licensees of the Structural Pest Control Board in a way it cannot do.

Our attention has been directed by the department to the recent case of Helle v. Hightower, 735 S.W.2d 650 (Tex. App. - Austin 1987, writ denied). That case was one in which Helle challenged rules of the department promulgated pursuant to section 76.104 of the Agriculture Code, and pursuant to its authority, under section 76.102, to certify applicators involving agricultural pest control. As pointed out above, persons regulated by the Structural Pest Control Board are exempted from section 76.104 and, thus, from the department's general regulatory power. The Helle case does not affect the questions before us.

Recapitulating our conclusions, we advise that (1) the Structural Pest Control Board, not the Department of Agriculture, has authority to license, certify and regulate

---

10. Some provisions of the Texas Pesticide Control Act are expressly made inapplicable to persons regulated by the Texas Structural Pest Control Act, but section 76.003 is not among them. That section authorizes the department to regulate the time and conditions of use of a _state-limited-use_ pesticide. However, the department has not limited its rule to such termiticides.

applicators of termiticides who do not work for commercial pest control businesses but who wish to apply restricted-use or state-limited-use pesticides in non-agricultural settings; (2) the department's challenged certification regulation is ineffective to regulate those whom the Structural Pest Control Board regulates and it does not exempt anyone from the licensing requirements of the Structural Pest Control Board with respect to restricted-use or state-limited-use pesticides; (3) regulations of the Department of Agriculture requiring registrants of pesticides and licensed pesticide dealers to maintain records concerning the distribution and use of termiticides are valid; and (4) regulations of the Department of Agriculture which attempt to directly regulate the licensees of the Structural Pest Control Board are ineffective.

### S U M M A R Y

The Structural Pest Control Board, not the Department of Agriculture, has authority to license, certify and regulate applicators of termiticides who do not work for commercial pest control businesses but who wish to apply restricted-use or state-limited-use pesticides in non-agricultural settings. Challenged rules of the Department of Agriculture are ineffective to directly regulate persons whom the Structural Pest Control Board is authorized to regulate, but those requiring registrants of pesticides and pesticide dealers to supply information about the distribution and use of termiticides are valid.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General